Good morning and welcome to the Ninth Circuit. A little housekeeping. One case is submitted on the briefs, United States v. Willem. The other five cases will be argued. And we've read the briefs. We look forward to your arguments.  Good morning. May it please the Court. My name is Eitan Kasteljanich, and I am representing Tracey Terry in this appeal. Terry has a combination of impairments, including degenerative joint disease in the cervical and thoracic spine, headaches, depression, and a pain disorder, all which added together limit her to no more than sedentary work. And they also actually prevent her from even doing sedentary work on a full-time basis. But the main issue here is whether or not, since May of 2013, she's been limited to at least sedentary. Because if she was under the medical vocational guidelines, she qualifies for Social Security disability. The ALJ's two main errors regarding, well, the medical evidence involved him, excuse me, her improperly rejecting the opinion of an examining physician, Dr. Rossetti, who opined that she was limited to no more than sedentary work, and also rejecting the opinion of an examining psychologist, Dr. Riddell, who noted that she had many significant mental functional limitations, but also observed the pain that she was, the discomfort that she had even sitting through an examination. There's also an issue in this case, and I'm not sure exactly what you're most interested in, but she, Terry was unrepresented at her hearing. I'm kind of most interested in the headaches. Okay. What does the record say about the headaches, and how was that factored in? Because, you know, there's headaches, and then there's migraines, and it can have a completely different effect. I mean, I can have a headache every day and take two Excedrin, and I can still be perfectly functional. But I know people that have migraines that have to go home and be in a dark room, can't do things, have to miss a lot of things that are considered. Well, headaches are always a hard thing to quantify, and the best advice I would give my client, if she had been my client at the time, would have been... Well, I know, but what does the record say? Well, what the record says, she submitted a diary with codes on it that listed every headache she had. Counsel, there's a finding of severe impairment. That includes migraines, right? It does. Okay. And then I understand that she submitted this evidence, and they've got this finding of severe impairment. I think this is what Judge Kalin had tried to get at, and I've got the same question. How is that accounted for? Well, that's the issue. It's not accounted for in the... That's the biggest problem. Okay, you've hit the nail on the head here. That's a huge problem in the ALJ's residual functional capacity assessment. I'm not sure that it is. I don't see it necessarily. There's a question of you can have a severe impairment and then exaggerate, and she's not found credible. Exaggerate the symptoms or the way it limits you. So can you go to that point? Okay. There's no basis in this record for questioning the legitimacy of her headache symptoms and the frequency of her headaches. The thing is that she submitted... Well, the gold standard of keeping track of headaches is keeping track of keeping a diary and writing them down every time you get one. She submitted that, and the ALJ didn't even discuss it, didn't consider it. Had the ALJ considered her headache diary, the ALJ could have and should have included limitations in her residual functional capacity assessment that addressed the fact that due to the frequency of her headaches, she would be having to stop work for two hours at a time while she's recovering from a headache. She would be missing work because of the headaches. None of that was included. Now, circling back, while that's very important for the residual functional capacity assessment, that's not the issue between whether she's limited to sedentary work or whether she's not. The frequency of her headaches would preclude any competitive work. So that is one angle, is that yes, she's disabled because of her headaches, but she's also disabled because when she hit age 50, she was limited to sedentary work. There's an opinion from Dr. Rossetti that she was limited to sedentary work, and the ALJ didn't state any legitimate reason to reject Dr. Rossetti's opinion. He cited and listed range-of-motion limitations, and range-of-motion limitations can reasonably cause a personality disorder. A person would be limited to sedentary work, and that was his opinion. There's no legitimate grounds for rejecting that. Have I addressed your question about the headaches? You're shaking your head. What I'd like to do, if you don't have any other questions, I would like to reserve my time for rebuttal. Let's hear from the other side, and you'll have quite a bit of time then. Good morning, may it please the Court. Jeff Staples, thank you for having me. I'm here on behalf of a commissioner who asks that you affirm the district court's judgment because substantial evidence supports the ALJ's decision here. Now, we've been talking a bit about headaches, but I think it's noteworthy that there's no doctor in this record that said that her headaches would cause any limitations beyond those that the ALJ found her to have. Well, but if you have, but she had a headache diary, I think, as far as, and the ALJ found that Ms. Terry's headaches constituted a severe impairment at, I think, ER 13. But then in analyzing the evidence for purposes of assessing residual functional capacity, the ALJ didn't refer to her headaches. So why isn't that reversible error? Well, the ALJ did refer to her headaches. At page 15 of the record, this is the ALJ's decision. He considered, she testified she had, going on to page 16, migraines or headaches every day. So this is in the ALJ's consideration of her testimony. She specifically called out the testimony about the migraines and the headaches that she said she was having every day. However, the ALJ is then tasked with comparing what she says with what the rest of the evidence shows, and that's what this court refers to as a credibility assessment. So do we think that the ALJ made some sort of determination? I know you say you have headaches all the time and blah, blah, blah, blah, blah, but the ALJ also said, I think you can do more than you say you can do. So is there some way that I can know that the ALJ said, well, I think you only have three headaches a month, and it's not debilitating the way that you're saying? Well, the ALJ didn't quantify how many headaches she thought that Terry actually had. What the ALJ found was that the headaches were not of such a severity that they would preclude her from working. And so in making that assessment, the ALJ relied on a wide variety of evidence, including some of the most important evidence is evidence from a treating source, someone who's seeing the person more regularly than just a one-time examiner.  And Dr. Kahn said he started seeing her, I believe, in 2013. He saw her for a period of several months, and then in early 2014, he said, you know, there's really nothing I can do for this person. She's just not satisfied with these benign, mild, objective findings. Well, that's that whatever somatoform, what is it? Yeah, that apparently she's got these things that are all wrong with her, but no one can figure out what's wrong. But I guess, did the ALJ provide specific, clear, and convincing reasons for discounting Ms. Terry's testimony about the limitations caused by her headaches and migraines? And if so, refer me to the ALJ's decision in the language that says that. Yes, Your Honor. For one thing, I think Dr. Kahn's opinion is itself a specific and legitimate reason to discount her allegations. That's evidence for support from which the ALJ may have made the finding. Where's the finding, please? The ALJ found that the medical evidence, this is at 17, the medical evidence supports my finding, the claimant can perform the physical demands of the above residual functional capacity. So the ALJ is contrasting the medical evidence with what she's saying and saying, no, this actually supports my finding instead of her allegations of much more severe limitations. So that's at 17. At 18, the ALJ says the claimant's allegations are not fully consistent with the objective medical evidence. So that's another consideration that the ALJ is justified in making when weighing how much, when deciding how much weight to give to Terry's allegations. The ALJ then went through much of the medical evidence, and that's, again, the evidentiary support for that finding. Then at 19, the claimant's daily activities are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. So, for instance, she said she could walk no more than two to five minutes at a time, but then there's other evidence in the record showing that she's going for hikes with her son every other day. She has a lot of different impairments, and there's some general statements about, that you've just read off at page 17 and 18. How do we know any of them go to the headaches? Because, after all, the headaches are identified by the ALJ as a severe impairment. So there's no specific comparison of, you say you have this many headaches, but X. But I don't buy it. You're exaggerating. We don't have that in the record, do we? No, but what you have is a finding that Terry's allegations are not consistent with the other evidence. And so when the ALJ makes that finding, there's no requirement that the ALJ go through every single thing that she ever told the agency and say, and I don't find this believable because that. The ALJ looks at the record as a whole. She looks at her allegations as a whole, and she summarized those allegations. And she said, here are the reasons I find these allegations not credible. Number one, her allegations are not consistent with the medical evidence. And when you've got Terry's treating doctor who's been seeing her for a period of several months, conducting a wide variety of tests on everything that she came in to complain about, and saying, boy, I can't help her with her quest for disability benefits because that's all she wants to talk about, and the objective findings, the things that my tests are finding, really don't support any of what she's saying. When you have pretty remarkable evidence like that in this record, that is the kind of thing that can justify a finding that this person is not fully believable in what they're saying about the severity of their impairments. It absolutely justifies such a finding. I'm just looking for the finding, that's all. Well, so the finding is there's no specific finding that the headache testimony in particular is not credible. But there are findings throughout the decision that her allegations as a whole are not credible, and there are many clear and convincing reasons supported by substantial evidence, most notably Dr. Kahn's assessment in support of that finding. Thank you. Moreover, the ALJ reasonably relied on much of the same evidence, and the record really didn't support the opinions from examining Dr. Roschetti or Riddell either. They both had fairly unremarkable examinations. Dr. Roschetti noted some range of motion limitations in Terry's neck and back, but again, the ALJ reasonably concluded that that small piece of evidence didn't support the severe limitations that Dr. Roschetti described, particularly when Terry was hiking, walking, doing all these things. So if just hypothetically, and I'm not saying, I mean, we haven't conferenced on this, so I don't know what the panel's going to do, but if hypothetically we were to remand this case for the ALJ to assess the residual functional capacity in light of her headaches, how would you envision that the proceeding would go at that point? What would happen? I don't see how it would be any different, Your Honor. I mean, the ALJ considered her headaches. I don't see what testimony she could give that would be any different. She said she has headaches and migraines every day. The ALJ expressly repeated that assertion in the decision and said, here's why I don't think this is credible. I don't really know what there could be. The ALJ is not, you know, that would specifically undermine a complaint that I have headaches this many times. All that is is just a subjective statement, and if you're not around her all the time, I don't know how you could, you're not in her head. I don't know how you could know that those aren't happening. What we do have is evidence that her impairments are not as limiting as she claims. And that's the evidence on which the ALJ focused here. And so, you know, there's Dr. Kahn's assessment, there's her activities, there's this wide variety of evidence that shows whatever she's claiming, it doesn't limit her to the extent that she's alleging. And I think that's the most important finding that the ALJ can make, and that's the reason that substantial evidence supports the ALJ's decision here. I see my time is almost up, but I just want to point out very briefly regarding the argument that the ALJ should have developed the record. Terry was advised of her right to cross-examine the vocational expert. The ALJ sent her a notice, and this is at page 200. The ALJ also went ahead and did her own development of the record, securing an additional almost 250 pages of medical records after the hearing. She held the hearing open for several months. She sent Terry a supplemental notice, a notice that she could have a supplemental hearing. So I think that argument is meritless as well, and for these reasons we'd ask the Court to affirm, unless there are any further questions. Thank you. Yanich, you saved quite a bit of time. I'm glad I did save time. There's a lot to say. Let me start with Dr. Kahn. Dr. Kahn did not say that there was nothing wrong with her. He said that he couldn't find anything. The exact quote is very telling. Let's look at headaches. It's a very hard thing to prove. If I was having a headache right now, you wouldn't know. Precisely. And that is the situation with her. She's got symptoms that are consistent that have gone on for years that show that. The second thing she's got, she's gone to her doctors and complained about this. The third thing she's got, the doctors have prescribed medications to her for this. And the fourth thing she's got, she actually has side effects from these medications, but she continues to take them because the benefit of the medications exceeds the side effects. The ALJ does not consider in her RFC the side effects of the medications that she has to take for the headaches. The ALJ does not consider the headaches. Nothing that the government has said today changes the fact that the ALJ did not say, explain how she was factoring in the headaches. She said, yes, she's got headaches, but she didn't include any limitations that actually correlate with her testimony about the headaches, nor did she state any convincing reason to reject any of her testimony about her headache symptoms, which are fully consistent with the course of treatment. It's the course of treatment here that proves the existence of the headaches, so to speak, and their pervasive nature, and the fact that as time progressed, she kept seeking additional help. She ended up going to Dr. Polo, a neurologist, to try to get treatments to find something that would work for the headaches, and she did different medications. She tried other things, but she continued to try to get treatment for the headaches. The other way we notice headaches, you just said you'd know I was having a headache if I was vomiting or couldn't keep my eyes open or something. Well, there is a lay witness that has described her observations, and those observations, the ALJ did not state any germane reason to reject any of Ms. DeGroat's observations. Let's see. Notably, no doctor in this entire file questioned the legitimacy of her complaints of headaches. Nobody questioned that. With regard to the height, I've addressed every issue that the ALJ used for rejecting her testimony. I've addressed them in my brief. You've read my briefs. Importantly, the ALJ did not state the reasons don't withstand scrutiny. Many of them do not. In fact, I would say that none of them really withstand scrutiny. Let's see. Please, I just urge you, you reread these briefs, reread her testimony, her description of what the headaches do to her, her description of the side effects of her medications. Those limitations alone are disabling. Unless you have any questions, I don't have anything further.
judges: W. Fletcher, Callahan, Christen